1

2

3                      UNITED STATES DISTRICT COURT

4                     NORTHERN DISTRICT OF CALIFORNIA

5

6

7    JEANNE E. CALDWELL

8             Plaintiff,                        No. C 05-4166 PJH

9        v.                                     **ORDER GRANTING**
                                                **MOTION TO STRIKE**
10   ROY L. CALDWELL, PH.D, et al.,             **AND MOTION TO DISMISS**

11            Defendants.
     _____/

12

13        Defendants' motion to dismiss and motion to strike portions of plaintiff's complaint

14   came on for hearing before this court on February 8, 2006.  Plaintiff Jeanne E. Caldwell

15   appeared through her counsel, Larry Caldwell, Kevin T. Snider, and Matthew McReynolds.

16   Defendants Roy L. Caldwell and David Lindberg (collectively "defendants") appeared

17   through their counsel, William J. Carroll and Christopher M. Patti.  Having read the papers

18   filed in conjunction with the motion and carefully considered the arguments and the relevant

19   legal authority, and good cause appearing, the court hereby GRANTS defendants' motions,

20   for the reasons stated at the hearing and as follows.

21                              **BACKGROUND**

22        Plaintiff is the mother of three and a resident of Placer County, California.  Two of

23   her children currently attend public school in Placer County.  Defendants occupy posts at

24   the University of California at Berkeley ("UC Berkeley"): defendant Caldwell is the Director

25   of the University of California Museum of Paleontology, and defendant Linburg is the Chair

26   of the Integrative Biology Department of the University of California at Berkeley.[1]

27

28        _____

          [1]    Defendant Michael Piburn, Program Director for the National Science
     Foundation, is not a party to this motion.

**United States District Court**
For the Northern District of California

1      On October 14, 2005, plaintiff filed the instant complaint, in which she takes issue

2 with a website published by the University of California, **http://evolution.berkeley.edu** (the

3 "Understanding Evolution" website).  The website is part of a larger website maintained by

4 the UC Berkeley Museum of Paleontology.  Its purpose is to educate teachers and the

5 general public about the science and history of evolutionary biology.  See Def. Op. Br. at

6 3:13-16.

7      Plaintiff's complaint alleges that the Understanding Evolution website contains

8 certain web pages that operate to impermissibly endorse, advance and proselytize certain

9 religious beliefs.  In particular, plaintiff alleges that the website pages endorse the following:

10 (1) the religious doctrine that religion and religious beliefs are limited to the spiritual and

11 supernatural world; (2) the religious doctrine that the theory of evolution is not in conflict

12 with properly understood Christian or Jewish religious beliefs; (3) content contained on a

13 link from the website to the National Center for Science Education ("NCSE"), which

14 contains seventeen doctrinal statements on the theory of evolution in support of the

15 website's theory that evolution is not in conflict with many Christian and Jewish religions;

16 and (4) the religious beliefs and religious viewpoints advocated by the NCSE, including the

17 seventeen statements just referenced.  See Complaint for Declaratory and Injunctive Relief

18 and Nominal Damages for Violation of the Establishment Clause of the First Amendment to

19 the United States Constitution ("Complaint"), ¶ 24.

20      As a result of this endorsement, plaintiff alleges that the government violates the

21 First Amendment Establishment Clause by setting up a preference for certain religious

22 groups over others – i.e., for those groups who are not in conflict with evolution over those

23 who are.  See id. at ¶ 29.  Plaintiff asserts this violation has caused her to suffer injury,

24 because she is "offended" when she views the website, and made to feel like an "outsider."

25 Id. at ¶ 26.

26      Defendants have moved to dismiss plaintiff's complaint in its entirety, arguing that

27 plaintiff lacks standing, and that her allegations cannot state an Establishment Clause claim

28

United States District Court
For the Northern District of California

1   on the merits in any event.  Defendants have also moved to strike paragraph 40(c) of

2   plaintiff's complaint, which alleges a prayer for "nominal damages in the sum of $100."

3       As part of their motion to dismiss, defendants have also filed a request for judicial

4   notice, in which they request that the court judicially notice the website pages at issue –

5   namely, the entire Museum of Paleontology website, including the "Understanding

6   Evolution" portion of the website.[2]

7                                    **DISCUSSION**

8       **A.    Legal Standards**

9       A court will dismiss a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim

10  only where it appears beyond doubt that the plaintiff can prove no set of facts in support of

11  the claim which would entitle the plaintiff to relief.  See, e.g., Broam v. Brogan, 320 F.3d

12  1023, 1033 (9th Cir. 2003) (citations omitted).  In evaluating a motion to dismiss, all

13  allegations of material fact are taken as true and construed in the light most favorable to

14  the nonmoving party.  See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d

15  661, 663 (9th Cir. 2000) (citations omitted).

16      A court may also strike any "insufficient defense or any redundant, immaterial,

17  impertinent or scandalous matter."  Fed. R. Civ. Proc. 12(f).  A motion to strike will be

18  granted where plaintiff has made an improper demand or prayer for relief as a matter of

19  law.  See, e.g., Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).

20  Notwithstanding, motions to strike are regarded with disfavor because of the limited

21  importance of pleadings in federal practice.  See, e.g., Colaprico v. Sun Microsystems, 758

22  F. Supp. 1335, 1339 (N.D. Cal. 1996).

23      **B.    Motion to Strike**

24      Defendants request that the court plaintiff's prayer for "nominal damages in the sum

25  _____

26      [2]      As the court noted at the hearing on the instant motions, both parties filed briefs
    in violation of Civil L.R. 3-4(c)(2), which requires that all footnotes be of the same font size as
27  the body of the text.  Accordingly, and in view of the violation, the court hereby STRIKES all
    footnotes cited in the parties' briefs, and declines to consider the substance of any content
28  contained therein.

United States District Court

For the Northern District of California

1   of $100." See Complaint at 15:1-2.  They assert that Eleventh Amendment immunity

2   applies to state officials like defendants, and limits the relief that may be awarded against

3   them to prospective injunctive relief, specifically excluding damages awards that require

4   payment of funds from the state treasury.  In response, plaintiff contends that nominal

5   damages have previously been upheld by federal courts against state actors, and that the

6   Ninth Circuit has expressly "left the door open to the possibility" that nominal damages may

7   be considered equitable – and therefore outside the confines of the Eleventh Amendment –

8   in cases such as this one, where the primary remedies sought are equitable in nature.

9       Resolution of the instant motion depends on whether Eleventh Amendment immunity

10  applies to defendants as state officials, and if so, whether it bars nominal damages under

11  Ninth Circuit law.

12      Defendants are employees and officials of a state university.  It is well-established

13  that a state university – and UC Berkeley explicitly – is entitled to Eleventh Amendment

14  immunity.  See, e.g., Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir.

15  1989)(noting the well-established rule that the UCs are "states" for Eleventh Amendment

16  immunity purposes).  It is equally well-established that state employees sued in their official

17  capacity as state officials are also entitled to Eleventh Amendment immunity.  See Students

18  for a Conservative Am. v. Greenwood, 378 F.3d 1129, 1130 (9th Cir. 2004).  This is the

19  case here: plaintiff has sued defendants in their official capacities as state employees.

20  Accordingly, since plaintiff has made no allegation that defendants have waived Eleventh

21  Amendment immunity, the immunity applies.

22      Pursuant to that immunity, a request for monetary damages that would require

23  payment from the state's general treasury fund is impermissible.  See Edelman v. Jordan,

24  415 U.S. 651, 677 (1973).  This would include – as is the case here – nominal damages.

25  See Taylor v. Westly, 402 F.3d 924, 929-30 (9th Cir. 2005)(generally, Eleventh Amendment

26  "shields state governments from money judgments in federal courts, and from declaratory

27  judgments against the state governments that would have the *practical effect* of requiring

28

United States District Court

For the Northern District of California

1    the state treasury to pay money to claimants")(emphasis added).

2        Moreover, plaintiff's support to the contrary is unavailing.  As defendants point out,

3    each case cited by plaintiff either involves a municipality as a defendant, or in the

4    alternative, involves the United States as defendant in situations in which statutory

5    provisions expressly allow for action to be taken against the Unites States.  Neither of these

6    factual scenarios is in evidence here.  As such, plaintiff offers no authority demonstrating

7    that the above prohibition on monetary damages – even if nominal – has been abrogated in

8    circumstances such as those here.

9        Accordingly, defendants' motion to strike is GRANTED.

10       **C.**    **Motion to Dismiss**

11       Defendants seek dismissal on two grounds.  First, defendants assert that plaintiff

12   lacks standing.  Second, they assert that in the event standing exists, plaintiff's allegations

13   nonetheless fail to state a claim for violation of the Establishment Clause on the merits.

14   Plaintiff challenges both assertions.

15           1.    Request for Judicial Notice

16       Prior to analyzing the merits of the above arguments, the court must first resolve

17   defendants' request for judicial notice.  Specifically, defendants seek to have judicial notice

18   taken of the UC Berkeley Museum of Paleontology website, **http://www.ucmp.berkeley.**

19   **edu/museum/museum.php,** including the Understanding Evolution portion of the site that

20   is directly at issue (i.e., **http://evolution.berkeley.edu/).**  See Request for Judicial Notice in

21   Support of Motion to Dismiss.  Defendants assert that the website provides necessary

22   context, and base their request on case law from the Central District of California holding

23   that judicial notice of websites is proper, as well as Ninth Circuit authority stating that a

24   document that is not a part of the complaint or record may be incorporated by reference if it

25   is the source of plaintiff's complaint or plaintiff's complaint refers to it extensively.  See

26   Wible v. Aetna Life Ins. Co., 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005); United States v.

27   Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Defendants have not attached a hard copy of

28

5

United States District Court
For the Northern District of California

1   any portion of the website to their request.

2        Generally speaking, a court must take judicial notice if a party requests it and

3   supplies the court with the requisite information.  See Fed. Rule Evid. 201(d).  Furthermore,

4   defendants are correct that although the general rule is that the court will look only to the

5   four corners of the complaint, the court may look outside the complaint where the outside

6   document has been referenced by, or relied on in the complaint itself.  See United States v.

7   Ritchie, 342 F.3d at 908.  Defendants are also correct that the Central District of California

8   has found web sites to be a proper subject for judicial notice.  See, e.g., Wible v. Aetna Life

9   Ins. Co., 375 F. Supp. 2d at 965.

10        The court agrees with the proposition that, as a general matter, websites and their

11   contents may be proper subjects for judicial notice.  However, the cases cited by

12   defendants are distinguishable from the facts here because in those cases, defendants

13   appear to have supplied the court with hard copies of the actual web pages of which they

14   sought to have the court take judicial notice.  Indeed, Federal Rule of Evidence 201(d)

15   generally contemplates that a party will provide the copy of the document it seeks to have

16   judicially noticed.  After all, the language of the rule provides that judicially noticeable facts

17   are those which are "capable of accurate and ready determination by resort to sources

18   whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  Here, by

19   contrast, without the actual web pages before it, the court is unable to pass on the nature of

20   facts contained within the entire website, whose accuracy cannot be determined with

21   reference to anything concrete.  This is especially significant, given the changing and

22   changeable nature of internet websites.  Indeed, the parties' own arguments here bear out

23   the importance of providing the court with the web pages for which judicial notice is sought.

24   The parties cannot even agree on the actual content of the website at issue, and the only

25   webpages in evidence are those submitted by plaintiff as an attachment to her complaint.[3]

26   ───────────────

27        [3]   At the hearing, the parties made competing arguments regarding the status of
the Understanding Evolution website, and in particular whether defendants have altered the
28   website since the filing of plaintiff's complaint.  After the hearing, both parties submitted

6

1    Accordingly, the court finds that defendants' request for judicial notice is deficient for

2  failure to comply with Rule 201.  While the court agrees with defendants that they should

3  not be required to submit an entire website as an exhibit, which might number several

4  thousands of pages, at a minimum, defendants must provide the specific webpages upon

5  which they will base their arguments and/or the specific pages which they claim provide the

6  necessary context for their arguments.

7    Defendants' request is therefore DENIED, without prejudice.

8        2.    Standing

9    To satisfy constitutional standing requirements, a plaintiff must prove that "(1) it has

10  suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,

11  not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of

12  the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be

13  redressed by a favorable decision."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.

14  (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S.

15  555, 560-561 (1992); Schmier v. U.S. Ct. of App. for Ninth Cir., 279 F.3d 817, 820-21 (9th

16  Cir. 2002).  In addition to these constitutional requirements, certain "prudential rules" have

17  been crafted, which prohibit federal courts from being forums for hearing generalized

18  grievances by taxpayers, and which allow for standing to be premised on a plaintiff's status

19  as state or federal taxpayer only if certain requirements are met.  See Bell v. City of

20  Kellogg, 922 F.2d 1418, 1422 (9th Cir. 1991).

21    Defendants assert that plaintiff has no standing for the following reasons: (1) plaintiff

22  fails to allege federal taxpayer standing; (2) plaintiff fails to allege state taxpayer standing;

23  and (3) plaintiff fails to allege cognizable injury in fact.

24

25  ─────────────────────

26  additional letters to the court on this same issue, each again arguing their respective positions
as to whether factual changes have been made to the website at issue.  In view of the court's

27  ruling on defendants' judicial notice request, as stated herein, the court does not consider
these arguments either way on the question whether the Understanding Evolution website has

28  materially changed, but references this dispute by way of illustration only.

United States District Court

For the Northern District of California

1

a.    federal taxpayer standing

2      The requirements for federal taxpayer standing are two-fold:  first, the plaintiff

3 taxpayer must establish a logical link between taxpayer status and the type of legislative

4 enactment attacked.  Second, the plaintiff taxpayer must establish a nexus between

5 taxpayer status and the precise nature of the constitutional infringement alleged.  See,

6 e.g., Flast v. Cohen, 392 US 83, 102-03 (1968); Bell, 922 F.2d at 1422.  Under this two-

7 pronged test, plaintiff may allege only the unconstitutionality of exercises of congressional

8 power under the taxing and spending clause – it is not sufficient to allege an incidental

9 expenditure of tax funds in the administration of an essentially regulatory statute.  See

10 Flast, 392 U.S. at 102.  The plaintiff must also show that the challenged enactment

11 exceeds specific constitutional limitations imposed upon the exercise of the congressional

12 taxing and spending power.  Id.

13      Plaintiff's complaint fails to make those requisite allegations here.  First, plaintiff

14 nowhere alleges any type of qualifying "legislative enactment" or congressional act.

15 Plaintiff alleges only that the Understanding Evolution website was funded in part by a

16 $523,261 grant from the National Science Foundation ("NSF"), a federal entity.  See

17 Complaint at ¶¶ 14, 18.  Plaintiff does not allege that the partial grant resulted from any

18 type of direct congressional action.  In sum, plaintiff's allegations amount to a complaint

19 against the NSF's administrative decision to partially fund the Understanding Evolution

20 website, not – as required – to a complaint against congressional action under the taxing

21 and spending clause.  As such, plaintiff's allegations are the essence of what Flast prohibits

22 – taxpayer standing on the basis of an incidental expenditure of tax funds in the

23 administration of an essentially regulatory statute.

24      Second, the "nexus" between plaintiff's taxpayer status and the nature of the alleged

25 constitutional infringement is missing.  Plaintiff does not allege any congressional

26 involvement in the NSF's decision to provide partial funding for the Understanding

27 Evolution website, or that the NSF merely acts as a vehicle to carry out Congress' orders

28

8

United States District Court

For the Northern District of California

1   and directives.  These facts beg the same result as the holding in <u>Fordyce v. Frohnmayer</u>,

2   763 F. Supp. 654 (D. D.C. 1991), a case cited by defendants.  In <u>Fordyce</u>, the court

3   rejected plaintiff's federal taxpayer standing claim because plaintiff alleged only that a grant

4   and sponsorship from the National Endowment for the Arts violated the Establishment

5   Clause.  The court specifically found that the required "nexus" for federal taxpayer standing

6   was missing because plaintiff was not alleging direct congressional involvement in the

7   NEA's decision to partially fund the exhibition in question, and plaintiff's allegations

8   amounted to no more than a challenge to a decision made solely by an agency of an

9   executive branch.  <u>See</u> 763 F. Supp. at 657.

10       Accordingly, the court finds that plaintiff has failed to allege federal taxpayer

11   standing, and plaintiff's complaint cannot be supported on this ground.

12                        b.    <u>state taxpayer standing</u>

13       In response to defendants' argument that plaintiff similarly fails to allege state

14   taxpayer standing, plaintiff asserts that she has alleged all elements necessary to plead

15   state taxpayer standing:  that she is a state taxpayer, and that "measurable sums of public

16   funds are being used to further the actions of Defendants."  Complaint at ¶¶ 9, 37.

17       The seminal state taxpayer standing case is <u>Doremus v. Board of Education</u>, 342

18   U.S. 429 (1952).  In that case, the Supreme Court explained that a state taxpayer has

19   standing when the taxpayer is able to show that s/he "has sustained or is immediately in

20   danger of sustaining some direct injury as the result of [the challenged conduct's]

21   enforcement."  <u>See</u> 342 U.S. at 434.  The direct injury requirement is in turn established

22   when the taxpayer brings a "good-faith pocketbook action" – i.e., when the challenged

23   statute or conduct involves the "measurable appropriation or disbursement" of state tax

24   revenues.  <u>See id.; see also Cammack v. Waihee</u>, 932 F.2d 765, 769 (9th Cir. 1991);

25   <u>Hoohuli v. Ariyoshi</u>, 741 F.2d 1169, 1178 (9th Cir. 1984)(pleadings must set forth the

26   "relationship between taxpayer, tax dollars, and the allegedly illegal government activity").

27       In <u>Cammack</u>, state taxpayer standing was found where plaintiffs set forth their status

28

United States District Court

For the Northern District of California

as state taxpayers and specifically stated the amount of funds appropriated and allegedly

spent by the taxing governmental entities as a result of the allegedly unconstitutional

conduct. See 932 F.2d at 771.  And in Hoohuli, state taxpayer standing was found where

the taxpayers challenged the "appropriating, transferring, and spending .... of taxpayers'

money from the General Fund of the State Treasury....," and where the plaintiffs' pleadings

set forth with specificity amounts of money appropriated and spent for allegedly unlawful

purposes.  See 741 F.2d at 1180.

Here, by contrast, plaintiff's allegations fall short.  Although plaintiff alleges she is a

state taxpayer, she fails to allege any specific expenditure of state taxes in connection with

the challenged website, let alone the specific amounts of state taxes at issue (as was the

case in both Cammack and Hoohuli).  Plaintiff makes only the general allegation that there

is "an identifiable sum of public funds being used to further the actions of the Defendants."

This general statement, without more, fails to allege the necessary relationship between

plaintiff, the state's expenditure of tax dollars, and the purportedly illegal government

conduct occasioned by the Understanding Evolution website.  Indeed, "public funds" could

mean either state or federal taxes.  Moreover, given that the only specific sum mentioned in

plaintiff's complaint is the $523,261 NSF grant, it is implausible that plaintiff's allegation as

to "public funds" and "specific tax dollars" can even be read to refer to state tax dollars.

Accordingly, for the reasons above, the court finds that plaintiff fails to sufficiently

allege state taxpayer standing.

c.    cognizable injury in fact

Article III standing requires that plaintiff plead a concrete "injury in fact" – i.e., some

actual or threatened injury as a result of the purportedly illegal conduct of defendant.  See

Valley Forge Christian College v. Am. United for Separation of Church & State, 454 U.S.

464, 472 (1982).  Plaintiff asserts that under Ninth Circuit authority, she need only allege

that she came into "direct and unwelcome contact with government-sponsored religious

messages that were contrary to her beliefs in a government owned and operated public

10

1   facility."  See Opp. Br. at 11:10-17.  Defendants, on the other hand, assert that plaintiff

2   alleges only "psychological injury" stemming from her observation of the website, and that

3   something more than this is required under Valley Forge.

4        In Valley Forge, plaintiffs challenged a congressional act that allowed for the transfer

5   of used government property to non profit, tax-exempt educational institutions, including

6   religious based institutions.  The Supreme Court used the case to set forth an exhaustive

7   discussion on standing requirements in the Establishment Clause context, and specifically

8   addressed the "injury in fact" requirement.  In determining that no standing existed where

9   plaintiffs alleged "the deprivation of the fair and constitutional use of their tax dollar," the

10  Valley Forge court reiterated its prohibition on standing claims that are predicated on "the

11  right, possessed by every citizen, to require that the government be administered according

12  to law...".  See 454 U.S. at 482-83.  The court then went on to state: "Although respondents

13  claim that the Constitution has been violated, they claim nothing else.  They fail to identify

14  any personal injury suffered by them *as a consequence* of the alleged constitutional error,

15  other than the psychological consequence presumably produced by observation of conduct

16  with which one disagrees.  That is not an injury sufficient to confer standing ... even though

17  the disagreement is phrased in constitutional terms."  See id. at 485-86.  The court

18  simultaneously reiterated that standing may nonetheless be based on noneconomic injury.

19  Id.

20       Here, plaintiff alleges that the injury she suffered was in being "offended" by viewing

21  the website, feeling like an "outsider," and "being exposed to the government endorsed

22  religious messages," to her harm.  See Complaint at ¶ 26.  On their face, these allegations

23  fall directly within Valley Forge's prohibition on standing where a plaintiff alleges only a

24  "psychological consequence" produced "by observation of conduct with which one

25  disagrees."  As such, plaintiff's allegations state only a generalized grievance against

26  defendants, and are insufficient to confer injury in fact.

27       Moreover, plaintiff's contrary arguments are unpersuasive.  To begin with, plaintiff's

28

United States District Court

For the Northern District of California

11

United States District Court

For the Northern District of California

1   reliance on four Ninth Circuit cases upholding citizen standing is misplaced.  See

2   Separation of Church & State Comm. v. City of Eugene, 93 F.3d 617, 619 n.2 (9th Cir.

3   1996); Am. Jewish Congress v. City of Beverly Hills, 90 F.3d 379, 381-82 (9th Cir. 1996);

4   Ellis v. City of La Mesa, 990 F.2d 1518, 1523 (9th Cir. 1993); Buono v. Norton, 371 F.3d

5   543 (9th Cir. 2004).  Without fail, each of these cases deals with a factual scenario in which

6   plaintiffs' alleged injuries stemmed from the inability to use a public or municipal park

7   because of an overt religious symbol or message placed in the public park.  While plaintiff

8   understandably seeks to analogize this case to those cases, contending that the "public"

9   nature of the Understanding Evolution website compels a similar result, such an analogy is

10  untenable.

11      First, there is a vast difference between a citizen's inability to use a public park due

12  to the presence of an overtly religious symbol, and a citizen's viewing of a purportedly

13  offensive website.  For example, a citizen who voluntarily chooses to access a public park

14  and comes upon an overtly religious symbol may well be prevented from utilizing and

15  enjoying the whole of the park by virtue of the unwelcome message.  By contrast, a citizen

16  voluntarily choosing to access the internet who comes across an unwelcome message on a

17  website page is not necessarily prevented from accessing the whole of the internet; the

18  citizen may choose, with a simple click of the mouse, to access a different and unoffensive

19  webpage or website.

20      Moreover, the unique nature of the internet cannot be overlooked.  It is a vehicle for

21  communication that is not capable of ready analogy to any other.  The internet contains

22  millions upon millions of websites and webpages, spanning a limitless number of subjects

23  and target audiences.  It is in daily use by millions, all of whom decide on a voluntary basis

24  (for the most part) which websites and webpages to access.  Given this massive appeal

25  and impossibly broad spectrum, it is simply inconceivable that the mere viewing of certain

26  webpages that do no more than make plaintiff feel "offended" and like an "outsider" is

27  sufficient to give rise to injury in fact standing.  If this were so, then every webpage on the

28

12

United States District Court

For the Northern District of California

1   internet could give rise to a claim, simply based on an individual's negative emotional

2   response to that webpage.  This is particularly significant, when one considers that the very

3   nature of certain websites and webpages is to be provocative, and to risk offence.  This

4   cannot be what was contemplated by either the Supreme Court or the Ninth Circuit when

5   those courts issued the decisions referred to above.

6       In sum, the court finds that plaintiff has done no more than to allege a generalized

7   grievance that is insufficient to establish "injury in fact" standing.  Accordingly, in view of the

8   fact that each of plaintiff's arguments in favor of standing fails, the court GRANTS

9   defendants' motion to dismiss plaintiff's complaint on the grounds that plaintiff lacks

10  standing.[4]

11              3.    Establishment Clause Merits

12      In view of the above holding, the court need not, and does not, reach the parties'

13  arguments on the merits of the Establishment Clause claim.  This conclusion is further

14  buttressed by the fact that the court, as described above, is currently unable to take judicial

15  notice of defendants' website.  As such, the court does not have access to what defendants

16  argue is the necessary and relevant context in which to evaluate plaintiff's claim.

17      Accordingly, consideration on the merits is premature at this juncture, and is better

18  suited to resolution if and when the case is again before this court.

19      **D.    Conclusion**

20      For the above reasons, the court GRANTS defendants' motion to strike, DENIES

21  without prejudice defendants' request for judicial notice, and GRANTS defendants' motion

22

23  _____

24      [4]    At the hearing on the instant motions, plaintiff's counsel suggested for the first
     time that discovery is necessary in order to ascertain whether facts that support standing exist.

25  Plaintiff did not cite to any authority for this proposition, nor is the court aware of any.  Indeed,
     the Ninth Circuit has expressly affirmed the district court's right to decide the standing issue

26  at the pleading stage, as opposed to the summary judgment stage, which takes into account
     facts established through discovery.  See, e.g., Schmier v. United States Ct. of App. for Ninth

27  Cir., 279 F.3d 817, 823-24 (9th Cir. 2002) (holding no error by district court "in deciding the
     standing issue at the pleading stage") ("th[e] injury element most assuredly remains the proper

28  basis of a motion brought under Fed. R. Civ. P. 12(b)(6)").

1    to dismiss with prejudice for lack of plaintiff's standing.

2

3    **IT IS SO ORDERED.**

4    Dated: March 13, 2006

5    _____

6    PHYLLIS J. HAMILTON
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

14